IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BYRON EUGENE JOHNSON,

        Plaintiff,                           No. CIV S-05-2123 GEB EFB P

    vs.

DAVID L. RUNNELS, et al.,
                                       ORDER AND FINDINGS
        Defendants.                   AND RECOMMENDATIONS

_____/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants J. Miranda and Rod A. Baillie have filed a motion for summary judgment as to all of plaintiff's claims. Plaintiff has filed a cross-motion for summary judgment as to his claims against Miranda arising out of the first and third incidents of alleged retaliation that are itemized below. He also has filed a motion for judicial notice. Fed. R. Ev. 201. For the reasons explained below, the undersigned recommends that defendants' motions be granted and that plaintiff's motions be denied.

       This action involves the following allegations: (1) defendant Baillie set in motion a stream of events that caused other prison officials to subject him to unconstitutional conditions of confinement; (2) defendant Miranda retaliated against plaintiff for filing a grievance by subjecting him to harsh treatment while escorting plaintiff to the showers, delaying plaintiff's

access to a shower and disturbing plaintiff's belongings during a cell search.

**I.  Judicial Notice**

Plaintiff requests that the court take judicial notice of various matters.  Defendants object to this request.

Upon properly supported request by a party, a federal court may take judicial notice of adjudicative facts.  Fed. R. Ev. 201(a), (d).  Facts subject to judicial notice are those which are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Ev. 201(b).  Here, plaintiff requests that the court take judicial notice of the following:  (1) plaintiff has limited access to the prison law library; (2) certain sections of the Departmental Operational Manual of the California Department of Corrections and Rehabilitation should be removed; (3) that the attorneys who represented defendants acted as a "tag team" by asking too many questions at plaintiff's deposition; (4) there is no evidence that the reason Miranda lost his job at the California Department of Corrections was because of his alleged conduct in the events giving rise to this action.  None of the above alleged facts are facts that are generally known or capable of accurate and ready determination.  Furthermore, none are facts appear to have any relevance to the issues in dispute in this case.  *See* Fed. R. Ev. 401, 402.  Therefore, the request for judicial notice is denied.

**II.  Motion for Summary Judgment**

Plaintiff's January 25, 2006, amended complaint alleges the following: (1) that defendant J. Miranda delayed releasing plaintiff for a shower in retaliation for plaintiff having exercised his First Amendment rights; (2) that J. Miranda slammed plaintiff against a wall while making racist comments to plaintiff in retaliation for plaintiff's exercise of his First Amendment rights; (3) that J. Miranda searched plaintiff's cell in retaliation for plaintiff having exercised his First Amendment rights; (4) that defendant Baillie passed a note to an unspecified prisoner falsely stating that plaintiff was associated with a gang which ultimately resulted in plaintiff's detention

in a dining hall for eight hours under constitutionally unacceptable conditions.

**A. Facts**

At all times relevant to this action, plaintiff was a prisoner confined at High Desert State Prison ("HDSP"). Amended Complaint ("Am. Compl."), at 1. Defendants Baillee and Miranda were guards at HDSP. Def. Baillie's Answer, ¶ 1; Def. Miranda's Mot. for Summ. J., Stmt. of Undisp. Facts, Attach. B, Decl. of Miranda ("Miranda Decl.").

**1. Facts Relevant to Claims Against Baillie**

Plaintiff alleges that at some unspecified time, Officer Baillie set in motion a chain of events leading to other prison officials subjecting plaintiff to unconstitutional conditions of confinement. Accordingly to plaintiff, Baillie created a list that falsely identified plaintiff as a member of a prison gang known as the Black Guerrilla Family ("BGF"). Baillie allegedly represented to other prison authorities that this list was a "kite"[1] that had been passed to him by "an anonymous" inmate. Am. Compl., at 6; Pl.'s Dep. lodged April 4, 2008, ("Pl. Dep."), at 39. Plaintiff denies being a gang member or associating himself with a gang. Pl.'s Dep., at 20, 23-24. Plaintiff further asserts that the note was passed on to Captain Brittle, who ordered a sweep of all suspected BGF members.[2] Am. Compl. at 6. Plaintiff concedes that he never saw the note that Baillie allegedly passed. Pl.'s Dep., at 58-60. At deposition, plaintiff testified that another prisoner, Anthony Little, told him about it and that he intends to call Mr. Little as a witness at trial. *Id*.

On December 30, 2002, in preparation for a lockdown prison officials confiscated all of plaintiff's and his cellmate's property from their cell. *Id*. at 30-31. The next day, December 31, 2002, Captain Bittle imposed a lockdown on African-American prisoners. Am. Compl., at 6.

---

[1] Plaintiff refers to notes by inmates under the prisoner parlance as a "kite." *See* Am. Compl. at 6.

[2] A "sweep" refers to the process of removing prisoners from their cells and other places around the prison and made to sit in a common area in preparation for investigation of wrongdoing and placing the prisoners on lockdown. Am. Compl. at 6.

3

All prisoners who were, or suspected to be, associated with the BGF were subjected to a sweep. *Id.* According to plaintiff, he was included in this sweep solely because of the note Baillie allegedly passed. Pl.'s Dep., at 35, 52. Thus, plaintiff asserts, in response to this falsified list, guards removed plaintiff from his cell, stripped him, searched him, handcuffed him and placed in the dining hall. Def. Baillie's Mot. for Summ. J., Stmt. of Undisp. Facts ("SUF") 5; Pl.'s Dep., at 27. Plaintiff says that his handcuffs were tight enough that they broke his skin, Am. Compl., at 33-34, but did not cause bleeding. Pl.'s Dep., at 33, 45. After sitting on a stool in the dining hall for about 8 ½ hours, a guard returned plaintiff to his cell and removed the handcuffs. *Id.* at 37. Thereafter, he was placed in administrative segregation because he was suspected of gang activity. *Id.* at 31, 40. After one week, plaintiff was released because there was no evidence that he was associated with the BGF. *See also Id*. at 42.

It is undisputed that Baillie did not remove plaintiff from his cell, strip him, search him, handcuff him or place him in the dining hall. *Id.* at 31. It is also undisputed that Baillie did not order any of these things. *Id.* at 19-24, 68. Defendant Baillie had no part in deciding who would be subject to the sweep and who would ultimately be placed in administrative segregation. *Id.* at 67, 68. Nonetheless, plaintiff claims that Baillie is responsible for how plaintiff was treated on December 31, 2002. This claim is based solely on plaintiff's belief that Baillie passed the falsified "anonymous" note associating plaintiff with the BGF. *Id.* at 28, 30, 52, 67-68. For purposes of this motion, defendant Baillie does not deny plaintiff's treatment or that he passed such a note up the chain of command.

### 2. Facts Relevant to Claims Against Miranda

On November 2, 2003, plaintiff called defendant Miranda, who was collecting outgoing mail, over to his cell. Pl.'s Dep., at 70. They had a disagreement over whether plaintiff's outgoing mail had to be unsealed. Miranda directed plaintiff to pass his mail in an unsealed envelope through the slot in the door. *Id.* Plaintiff believed that he could give it to Miranda in a sealed envelope because mailroom staff would inspect the sealed mail anyway for contraband.

4

1  *Id.* Therefore, plaintiff refused Miranda's order. *Id.* Miranda again ordered plaintiff to pass the
2  mail through the slot without sealing the envelope, and plaintiff complied. *Id.* at 71. Plaintiff
3  filed a grievance about the incident. *Id.*

4        Plaintiff had no more contact with Miranda until January 11, 2004, when a lockdown[3]
5  was ending. *See* Def. Miranda's Mot. for Summ. J. Stmt. of Undisp. Facts, Attach B, Miranda
6  Decl., at ¶¶ 4, 5; Pl.'s Dep., at 76. Ending a lockdown is a gradual process during which there is
7  a heightened risk of prisoners attacking each other. Miranda Decl., at ¶¶ 4-5. For security
8  reasons, guards escort prisoners to and from showers one at a time. *Id*. at ¶ 4. They also conduct
9  random searches of prisoners' cells. *Id.* at ¶¶ 5, 6. Sometimes guards search a cell while its
10 occupants are in the shower, in which case the prisoners are held in shower stalls until the search
11 is finished. *Id.* at ¶ 7. Sometimes when prisoners are held in shower stalls during searches, all
12 the stalls are occupied. *Id.* When this happens the time for other prisoners to shower is delayed.
13 *Id.*

14       At approximately 2:15 p.m. that day, Miranda offered plaintiff and his cellmate,
15 Washington, an opportunity to shower. Pl.'s Dep., at 72. Plaintiff accepted; Washington
16 declined. *Id.* at 72-73. Plaintiff told Miranda that he wanted a shower to accommodate his
17 disability.[4] *Id.* at 72. At around 8:00 p.m., Miranda escorted plaintiff to the shower. *Id.* at 73.
18 Plaintiff says that he was accustomed to using a shower on a lower level and he headed in that
19 direction. *Id.* at 73-74. Miranda demanded to know where plaintiff was going. *Id.* at 74.
20 Plaintiff asserts that Miranda grabbed him and threatened to "slam [plaintiff's] black ass to the
21 concrete," while "snatching, pushing and pulling . . . plaintiff to the shower . . . ." *Id.* at 74, 76,
22 79. For purposes of this motion, defendant Miranda does not dispute that he made racial slurs

---

[3] This lockdown was distinct from the one imposed in December of 2002.

[4] None of plaintiff's claims pertain to a need for a shower stall that is designed to accommodate prisoners with disabilities.

5

directed at plaintiff nor dispute using the force plaintiff describes.[5] Def. Miranda's SUF, at 19. Upon arriving at the shower area, no stall was available for plaintiff because they were occupied by prisoners whose cells were being searched. Miranda Decl., at ¶ 14.

Miranda decided to search the prisoners' cell while plaintiff showered in order to accomplish two tasks at once. *Id.* at ¶ 13. Thus, while plaintiff showered, Miranda removed Washington from the cell and searched it. Def. Miranda's SUF 20; Pl.'s Dep., at 82. From his shower stall, plaintiff could see Miranda walk from plaintiff's cell to the shower stall where Washington was secured. Pl.'s Dep., at 83, 85. At deposition, plaintiff testified that he saw Miranda and Washington talking. *Id.* Plaintiff asserts that Miranda verified with Washington which items belonged to plaintiff and which did not. *Id.* at 77-78, 84. Specifically, plaintiff testified at deposition that Miranda asked who owned photographs on the wall and that Washington said they were his. *Id.* at 78. Plaintiff claims that Miranda then stated that if the photographs had belonged to plaintiff, he (Miranda) would have torn them down. *Id.* Plaintiff purports to know about these statements because, he contends, later that day Washington told him of the substance of the conversation with Miranda. *Id.* at 85. However, plaintiff has no personal knowledge of the substance of the conversation. Nor does he submit a declaration from Washington.

Plaintiff says that when he returned to the cell, his belongings were strewn about and his legal mail was on the floor in disarray and his toothbrush was out of its holder on the floor. *Id.* at 76-77. It appeared that Washington's belongings, including the photographs, were untouched. *Id.* at 77, 83. Plaintiff also asserts that Washington had at least 60 apples he planned to sell to other prisoners to make wine, *id.* at 77, and that those apples remained undisturbed. *Id.* at 85. After these events, plaintiff filed more grievances. *Id.* at 80-81. Defendant Miranda denies having a retaliatory motive with respect to any of the incidents described above. Miranda Decl.,

---

[5] Defendant Miranda concedes this fact only for purposes of summary judgment. Def. Miranda's SUF, at 3, n. 1. He denies this allegation in his declaration. Miranda Decl., ¶ 17.

6

¶ 12. Miranda asserts that he has never searched a prisoner's cell or delayed a prisoner's shower in retaliation for the prisoner having filed an appeal complaining about him. *Id.* at ¶ 10-12.

### B. Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See*

7

*id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented

8

could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On November 2, 2006, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). On April 29, 2008, the court gave plaintiff a 60-day extension of time to file oppositions to defendants' motions for summary judgment. In spite of these orders, he has not filed an opposition. Instead, he merely filed motions to postponed ruling on summary judgment, which the court has previously denied..

**C. Analysis**

    **1. Defendant Baillie**

        **a.  Inhumane Conditions of Confinement**

Plaintiff alleges that at some unspecified time, Baillie set in motion a chain of events leading to other prison officials subjecting plaintiff to unconstitutional conditions of

9

confinement. Baillie allegedly instigated this by passing up the chain of command a note stating that an anonymous source had reported that plaintiff was a member of the BGF. Plaintiff believes that because of this note, he was included an a sweep of suspected BGF members and subjected to unconditional conditions of confinement. Those conditions include being forced to sit on a metal stool in a dining hall for 8 ½ hours while handcuffed.

The Eighth Amendment prohibits deliberate indifference to conditions of confinement that violate contemporary standards of decency, i.e, those which deny "the minimal civilized measure of life's necessities," or which pose a risk of a harm "that is not one today's society chooses to tolerate." *Rhodes v. Chapman*, 452 U.S. 337 (1981); *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The question of deliberate indifference is subjective. Thus, a prison official is deliberately indifferent when he knows of, or infers from the circumstances, a risk of harm or injury that would violate the Eighth Amendment, yet fails to take reasonable actions to mitigate or eliminate that risk. *Farmer*, 511 U.S. at 837. Whether a particular condition of confinement violates the Eighth Amendment, however, is objective. The conditions of a prisoner's confinement must have some legitimate penological purpose. *See Hudson v. Palmer*, 468 U.S. 517, 584 (1984); *Rhodes*, 452 U.S. at 347. A prisoner must not be subjected to unnecessary and wanton infliction of pain, i.e., a condition completely devoid of penological justification. *Rhodes*, 452 U.S. 346-47; *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

Here, Baillie asserts that there is no genuine issue about whether he caused this deprivation. Causation is a crucial element in the analysis of an Eighth Amendment claim. *See Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The existence of causation depends upon the duties and

10

responsibilities of the individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633. The "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743-44.

   Plaintiff claims that Baillie indirectly caused the alleged constitutional deprivation by writing a note falsely naming plaintiff as a BGF gang member or associate, and passing it up the chain of command where it made its way to Captain Bittle, who ordered the sweep.[6] For purposes of this motion, much of plaintiff's allegations are undisputed. It is undisputed that Captain Bittle ordered a sweep of suspected BGF members and that plaintiff was subjected to the sweep. It also is undisputed that plaintiff has never associated with gangs. However, plaintiff has no personal knowledge of the note or its contents, or who wrote it. He does not submit an affidavit from a witness with personal knowledge of any of these facts concerning the note. Indeed, he does not submit evidence that a note was ever passed. At deposition, he testified that he would provide at trial evidence regarding the note's contents and other details. However, the purpose of summary judgment is to determine whether there is any reason for a trial. Plaintiff cannot withstand summary judgment without presenting evidence upon which a reasonable fact finder could rely to render judgment in his favor on his claims that Bailee committed the acts of which plaintiff accuses him. Plaintiff has the burden of proof at trial; and, therefore, on summary judgment he has the burden of submitting evidence sufficient to prevail on each essential element of his claims. His speculation as to the content of the note, and his speculation that Baillie wrote it and passed it on fail to meet his burden in opposing this motion. Construing the facts in the light most favorable to plaintiff, there is no basis for finding that Baillie engaged

---

[6] The alleged chain of events is as follows: (1) Baillee wrote a note implicating plaintiff in BGF membership; (2) Baillee passed the note to a prisoner; (3) this prisoner passed it to another prisoner; (4) Captain Bittle ended up with the note; (5) Captain Bittle included plaintiff in the sweep of suspected BGF members; (6) plaintiff's rights were violated during the sweep.

11

in the acts plaintiff alleges.  Accordingly, there is no genuine issue about whether Baillee caused the deprivation of which plaintiff complained and Baillee is entitled to summary judgment on this claim.

### 2.  Defendant Miranda

#### a.  Retaliation - First Amendment

Plaintiff claims that defendant Miranda retaliated against him for filing a grievance.  He claims that Miranda: (1) threatened him with violence and using racially derogatory language while being overly rough in escorting plaintiff to the shower; (2) delayed plaintiff's time to shower; and (3) unnecessarily disturbed plaintiff's belongings while searching his cell.

A retaliation claim has five elements: (1) a state actor took some adverse action against a prisoner; (2) because (3) the prisoner engaged in protected conduct; (4) resulting in the chilling of plaintiff's First Amendment rights; and (5) the action did not reasonably advance a legitimate penological goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2003).  On summary judgment, a plaintiff must submit evidence that prison officials took some action against him "for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  Prisoners have a First Amendment right to file administrative appeals. *See Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003).  Institutional order and discipline are legitimate penological goals.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

#### I.  Treatment During the Escort

Plaintiff alleges that Miranda verbally abused him and was rough and abusive when escorting plaintiff to the showers on January 11, 2004.  Allegedly, this was in retaliation for plaintiff filing a grievance.  Miranda argues that the threats and racial slurs alleged here are not "adverse actions" and therefore are not actionable as retaliation under Ninth Circuit precedent.

////

////

1  Plaintiff's position on this point is unclear. On the one hand he concedes the point. On the
2  other, he advances his own cross-motion for summary judgment on the matter.

3        The complaint asserts that the verbal abuse was "adverse" because it was accompanied
4  by rough treatment. The issue, however, appears to be one of degree. The Ninth Circuit has
5  found that a variety of actions can rise to the level of being adverse action, including placing a
6  prisoner in administrative segregation, *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir.2004),
7  validating a prisoner as a gang member, *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003),
8  repeatedly threatening to transfer a prisoner and attempts to transfer him, *Gomez v. Vernon*, 255
9  F.3d 1118, 1127 (9th Cir. 2001), and transferring a prisoner to a different prison, *see Pratt v.*
10 *Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). These actions are adverse because they either work
11 a significant and harmful change in the conditions of plaintiff's confinement or generate in the
12 prisoner genuine anticipation that such a change will occur. Here, it is alleged that during one
13 escort, Miranda threatened plaintiff with physical force, made racial slurs and used rough
14 treatment. Therefore, this case involves more than mere threats. But there is no claim that
15 plaintiff was physically abused or assaulted. Nor is there a claim that the racial slurs, rough
16 treatment, and threats of force have repeatedly occurred. Rather, these alleged actions fall short
17 of and are markedly different from those found to be adverse for purposes of a constitutionally
18 cognizable retaliation claim. The conduct alleged here, if true, is boorish but is not of such
19 severity as to rise to a level of constitutional proportion. Undoubtedly, plaintiff is dissatisfied
20 with the treatment during the escort to the shower. But his dissatisfaction with his treatment
21 cannot be separated from the context of his confinement in a prison. Verbal abuse and rough
22 treatment short of excessive force are hardly uncommon in a prison setting and there is no
23 evidence that Miranda ever slammed plaintiff to the ground or otherwise actually employed
24 excessive force. Nor is there evidence that this conduct was arbitrarily or unduly severe or
25 approximated the instances in which the Ninth Circuit has held a prison guards acts to be
26 "adverse" actions in retaliation for exercising First Amendment rights. Accordingly, there is no

genuine dispute as to this question and Miranda is entitled to summary judgment on this claim.

Furthermore, plaintiff fails to establish a causal nexus between the rough treatment and his prior grievances. The evidence of causation is scant. At trial, plaintiff will have the burden of establishing a causal connection between the exercise of constitutional rights and the allegedly retaliatory action. *See Pratt v. Rowland*, 65 F.3d at 807. Causation may be shown by evidence sufficient for a jury to infer that the defendant's conduct was motivated by the plaintiff's exercise of a protected right. This may consist of direct evidence or circumstantial evidence, such as a defendant's conduct inconsistent with previous acts and the temporal proximity between the plaintiff's exercise of his right and the allegedly retaliatory conduct. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003); *see also Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001). Here, Miranda denies that he was motivated by retaliation for filing grievances in taking the action he did in escorting plaintiff to the shower and plaintiff presents no evidence contesting this assertion. There is no evidence that during the escort Miranda mentioned grievances, revenge or anything that could raise an inference of an intent to retaliate. While the language may have been crude, even demeaning, there is no evidence to establish a genuine dispute about whether Miranda's treatment of plaintiff was motivated by a desire to retaliate instead of a reaction to plaintiff heading in a different direction than instructed. *See* Pl.'s Dep., at 73-74.

### ii. **The Delayed Shower**

Miranda contends that there is no genuine dispute about whether he delayed plaintiff's shower because plaintiff filed grievances. Rather, he asserts that the delay served a legitimate penological interest; namely to complete the required cell searches during the lockdown. Plaintiff contends that there is a genuine dispute on this element of his claim.

It is undisputed that on January 11, 2004, a lockdown at the prison was ending. It also is undisputed that at around 2:15 p.m. that day, defendant Miranda offered plaintiff and his cellmate the opportunity to shower. Plaintiff accepted, but Miranda did not take him to the

1  shower until 8:00 p.m.  Miranda has submitted evidence that when a lockdown is ending,
2  security measures are more stringent than usual.  Thus, guards escort one prisoner at a time to
3  and from the shower area.  They also randomly search prisoners' cells.  They can accomplish
4  both at the same time by searching cells while prisoners shower.  To do this, guards secure
5  prisoners in shower stalls while they conduct searches.  These measures necessarily delay
6  prisoners' showers.  This clearly constitutes a legitimate penological purpose.  Plaintiff has
7  submitted no evidence in response to contest the security measures, their legitimacy or the
8  consequent delay in otherwise ordinary events at the prison.  Thus, on the record before the court
9  there is no evidence to establish a genuine dispute about whether Miranda acted with a
10 retaliatory motive rather than to conduct the searches.

### iii. The Cell Search

Plaintiff claims that Miranda disheveled his belongings while searching his cell because plaintiff filed a grievance.  Miranda contends that there is no genuine issue with respect to whether he was motivated by retaliatory intent.  In his opposition and cross-motion, plaintiff contends that the search was not "necessary" because their cells were searched before the lockdown.  Therefore, he argues, they were not legitimate.

As to the manner in which Miranda conducted the search, plaintiff again fails to establish the element of a causal nexus between the search and the prior protected activity.[7]  It is undisputed that both plaintiff and Washington were absent during the search.  However, plaintiff testified in his deposition that while he was showering, he saw Miranda speak with Washington. He also testified that Washington told plaintiff about their conversation and, according to Washington, Miranda was verifying which items belonged to plaintiff.  Whatever points plaintiff attempts to establish form the substance of the conversation between Miranda and Washington,

---

[7] For purposes of the motion, Miranda does not contest plaintiff's assertion that after the search plaintiff's belongings were strewn about but Washington's, including obvious contraband, were undisturbed.

15

there is no evidence presented to establish its content.  Plaintiff does not assert that he has personal knowledge of the conversation; and, therefore, he cannot relate its substance.  Plaintiff has not submitted a declaration from Washington describing the substance of this conversation. Without evidence to support plaintiff's allegation that Miranda was verifying what belonged to plaintiff, a reasonable fact finder could not find in plaintiff's favor at trial based simply on plaintiff's speculation over what statements were or were not made.  Accordingly, Miranda's motion for summary judgment must be granted and plaintiff's counter-motion must be denied.

### 3. Qualified Immunity

Baillie and Miranda assert that they are entitled to qualified immunity.  Plaintiff does not address this question with respect to Baillie.  However, he contends that Miranda cannot succeed on this defense.  However, the court has concluded that defendants are entitled to judgment as a matter of law and therefore does not reach the question of qualified immunity.  *See Wilkie v. Robbins*, 127 S.Ct. 2588, 2608 (2007).

### III.  Conclusion

For the reasons explained above, there is no genuine issue for trial on plaintiff's claims against Baillie and Miranda and their motions for summary judgment must be granted.

Accordingly, it hereby is ORDERED that:

1. Plaintiff's June 30, 2008, motions to continue this matter pursuant to Rule 56(f) are denied; and,

2. Plaintiff's June 15, 2009, request for judicial notice is denied.

Further, it is RECOMMENDED that:

1. Defendant Miranda's April 3, 2004, motion for summary judgment be granted;

2. Defendant Baillie's April 4, 2004, motion for summary judgment be granted;

3. Plaintiff's April 24, 2009, cross-motion for summary judgment be denied;

4. Judgment be entered in favor of those defendants; and,

////

1        5.  The Clerk be directed to close the case.

2        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 15 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 15, 2009.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE